*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AGUSTIN GARCIA, :
:  Civil Action No. 13-1250 (PGS)
        Plaintiff, :
:
        v. : **MEMORANDUM**
:
CORR. MED. SERV., et al., :
:
        Defendants. :

**APPEARANCES:**

**AGUSTIN GARCIA, Plaintiff pro se**
822642B/428336
New Jersey State Prison
P.O. Box 861
Trenton, N.J. 08625

**SHERIDAN**, District Judge

    Plaintiff, Agustin Garcia ("Plaintiff"), a state inmate currently confined at New Jersey State Prison in Trenton, New Jersey, seeks to bring this action *in forma pauperis*. Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

    At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint should proceed in part.

## I. BACKGROUND

Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants Correctional Medical Service ("CMS"); Ralph Woodward, M.D.; Abu Ahsan, M.D.; Dr. Nuggen, M.D.; Despina Terris, M.D.; Saint Francis Medical Center; Charles Warren, Jr.; New Jersey State Prison; Gary Lanigan; New Jersey Department of Correction; New Jersey Department of Public Safety and Correctional Services; and John and Jane Does Nos. 1-30. The following factual allegations are taken from the amended complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

Beginning in February 2002, Plaintiff alleges that he repeatedly complained about symptoms such as testicle pain and lack of energy, however it was over ten years before the medical staff at New Jersey State Prison ordered a consultation with an urologist. (Compl. ¶ 20.) Plaintiff alleges that the urology consult lead to a prostate biopsy which revealed the "presence of prostate cancer at the Gleason level 6." (*Id.*) According to "Oncologist," a course of forty-four radiation sessions would be required to treat the cancer. (*Id.*)

On or around December 11, 2011, Defendant Nuggen performed a prostate biopsy on Plaintiff at Saint Francis Medical Center. (*Id.* at ¶ 21.) Plaintiff was returned to New Jersey State Prison on the same day, without any post-surgery medication to prevent infection, despite him having requested said medicine from Jane Doe No. 3, a nurse at Saint Francis Medical Center (*Id.* at ¶¶ 21-22.) When he arrived back at NJSP, Jane Doe No. 4, a nurse, informed Plaintiff that the file sent by Saint Francis was lost and that he was being sent back to his housing unit. (*Id.* at ¶ 23.) Jane Doe No. 4 refused to provide Plaintiff with antibiotic, stating that prescribed post-surgery medication would be delivered to him, but no such medication ever arrived. (*Id.* at ¶

2

24.)

On or about December 17, 2011, Plaintiff was taken to Saint Francis via an ambulance, where he was diagnosed with: (1) E. coli sepsis; (2) Cholelithiasis and cholecystitis; (3) Hyponatremia; (4) Normocitic anemia; and (5) Protastic adenocarcinoma. (*Id.* at ¶ 25.) Plaintiff remained at Saint Francis until December 23rd while he received treatment for the blood contamination. (*Id.* at ¶ 26.) Thereafter, he was transferred to the New Jersey State Prison Infirmary for two weeks of antibiotic treatment, and then returned to Saint Francis for gall bladder removal on February 9, 2012 due to cholecystis from the biopsy. (*Id.*)

On or about March 5, 2012, Plaintiff was brought to Saint Francis where he was informed that he would be examined the next day in order to obtain a second opinion regarding his prostate diagnosis. (*Id.* at ¶ 29.) However, the following day, Defendant Nuggen showed up and instead performed prostate marking in preparation for radiation therapy. (*Id.*) During the night following this procedure, Plaintiff experienced symptoms of severe diarrhea, together with "overall collapsing of immune system, lost [sic] of strength, fever and alike." (*Id.*) On March 21, 2012, Plaintiff submitted a "tort notification" to the New Jersey Department of Treasury regarding the "biopsy blood contamination issue." (*Id.* at ¶ 30.) In early April 2012, Plaintiff's radiation therapy began under the supervision of Defendant Terris, however Plaintiff's radiation therapy was suddenly discontinued for months due to the tort notification he had submitted to the Department of Treasury. (*Id.*) When he did receive radiation, he only received "60 minutes of defective continued therapy in place of prescribed 15 minutes session." (*Id*.) Consequently, radiation failed to accomplish its objective of eradicating all cancer cells. (*Id.*)

## II. DISCUSSION

### A. Legal Standard

**1. Standards for a *Sua Sponte* Dismissal**

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 28 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is proceeding as an indigent and is a prisoner.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[1], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

4

Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

2.  **Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**B. Analysis**

1.  **Eighth Amendment**[2]

---

[2] The Supreme Court has held that the States, arms of the States, and state officials acting in their official capacities, are not "persons" within the meaning of the § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165 (3d Cir. 1997) (a political subdivision of the state is not a "person" within the meaning of § 1983 if it is effectively an "arm of the State" for Eleventh Amendment purposes). As such, all Eighth Amendment claims against the New Jersey Department of Corrections, New Jersey Department of Public Safety and New Jersey State Prison are hereby dismissed.

Plaintiff alleges that Defendants CMS, Woodward, Ahsan, Nuggen, Terris, Saint Francis Medical Center, Charles, Gary and John and Jane Does Nos. 1-30 were deliberately indifferent to his serious medical needs, thereby violating his Eighth Amendment rights.

To state a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, a plaintiff must show (1) deliberate indifference by prison officials to (2) the prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). Where prison officials know of the prisoner's serious medical need, deliberate indifference will be found where the official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In order to find deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *U.S. ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979) (internal quotation marks omitted). Claims of negligence or medical malpractice do not constitute deliberate indifference. *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001).

"In order for liability to attach under § 1983, a plaintiff must show that a defendant was

personally involved in the deprivation of his federal rights." *Fears v. Beard*, No. 12–4564, 2013 WL 3834399, at *2 (3d Cir. July 25, 2013) (per curiam) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). "[L]iability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).

Plaintiff generally alleges that from 2002 until 2011, he complained of testicular pain and lack of energy, but he was denied a urology consultation. However, he does not allege any specific incidents where he requested or sought medical attention and was denied care in that time frame. With regard to the infection arising from his biopsy in 2011, Plaintiff alleges that he asked Jane Doe No. 4, a nurse at the prison, for his medication but she refused to provide it, which led to his blood contamination. That claim will be allowed to proceed at this time, as Plaintiff has alleged sufficient facts to show that the nurse was aware of his need for medical care but denied necessary treatment. Plaintiff also alleges that Defendant Terris, a "staff physician/Oncologist for Defendants CMS, NJDOC, NJSP and/or Saint Francis," and Defendant Jane Doe No. 1, a "radiation therapist…for Defendants CMS, Saint Francis and/or Terris," discontinued and shortened his radiation sessions based upon Plaintiff having filed a notice of tort claim about the blood contamination issue. If true, Defendants Terris and Jane Doe No. 1 delayed medical treatment for a non-medical reason and as such, this claim will also be allowed to proceed at this time. The rest of Plaintiff's allegations regarding medical care do not establish deliberate indifference by the other defendants. He was clearly receiving treatment and his disagreement with the choices made by the medical professionals does not state an Eighth Amendment claim.

7

*Singletary*, 266 F.3d at 193.

For the supervisory defendants Woodward, Ahsan, Warren and Lanigan, Plaintiff has not shown any personal involvement by these individuals. *Evancho*, 423 F.3d at 353; *Stringer v. Bureau of Prisons*, 145 F. App'x 751, 753 (3d Cir. 2005). Nor has Plaintiff stated a valid Eighth Amendment claim against Defendants CMS or Saint Francis. The Third Circuit has said that

> [t]o bring a § 1983 claim against a local government or government entity (including a private corporation, like CMC, that is alleged to be acting under color of state law, *see Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003)) for the actions of an employee of one of those entities, a plaintiff cannot rely upon respondeat superior liability, but he must show that the entity had a policy or custom that caused his deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "A policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict. A custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Natale*, 318 F.3d at 584 (alteration in original) (citation and internal quotation marks omitted). A policy or custom can be established in three ways: (1) the entity or supervisor promulgates an applicable policy statement and the act the plaintiff complains of is the implementation of that policy; (2) the policymaker, without a formally announced policy, violates federal law itself; or (3) the "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Id.*

*Defreitas v. Montgomery Cnty. Corr. Facility*, 525 F. App'x 170, 176-77 (3d Cir. 2013) (internal quotation marks omitted).

In this case, Plaintiff has failed to allege "sufficient factual matter" to show that the claims against CMS and Saint Francis are facially plausible. *Fowler*, 578 F.3d at 210. Though he alleges that these defendants have "policies" in place to "lower costs", "hire substandard medical personnel" and "falsely and/or inadequately diagnose prisoners' medical conditions," he fails to allege any facts to support these allegations or otherwise indicate that those claims are plausible.

8

As such, the Eighth Amendment claims against these defendants will be dismissed without prejudice.

**2. Conspiracy**

In Count Four of his complaint, Plaintiff alleges that all of the defendants "conspired with one another to deprive Plaintiff of his health, peace of mind and life." (Compl. ¶ 67.) Plaintiff appears to allege a conspiracy pursuant to §§ 1983 and 1985. Plaintiff also alleges a claim under 42 U.S.C. § 1986. (Compl. ¶¶ 75-81.)

To demonstrate the existence of a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, 528 F. App'x 136 (3d Cir. 2013) (internal citations omitted). To plead a conspiracy claim properly, a plaintiff must allege "facts that plausibly suggest a meeting of the minds." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010). The complaint must not plead merely a "conclusory allegation of agreement at some unidentified point." *Twombly*, 550 U.S. at 557. The elements of a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotations and citations omitted). To state a claim under § 1986, a plaintiff must show: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985

9

conspiracy, and (4) a wrongful act was committed." *Clack v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994).

Plaintiff has alleged no facts to support a claim for a conspiracy. He simply states in a conclusory manner that all the defendants conspired to deprive him of his rights. Therefore, all conspiracy claims are dismissed, as well as the claim pursuant to § 1986. *See Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980) (a claim under § 1986 cannot survive without a valid § 1985(3) claim).

**3. State Law Claims**

Plaintiff alleges the following state law claims: (1) "breach of contract causing damage to intended third party beneficiary;" (2) medical malpractice; and (3) infliction of emotional distress.

**a. Breach of Contract**

In the first count of his complaint, it appears that Plaintiff is alleging that he is an intended third party beneficiary of the contract between CMS and "Defendant Woodward, and/or Saint Francis, and/or NJSP, and/or NJDOC, and/or the Department," to provide prisoners with medical care. (Compl. ¶ 34.) As a third party beneficiary, Plaintiff alleges a claim against CMS for breach of contract. (*Id.* at ¶ 43.)

Other courts in this district presented with this exact issue have found that:

> Plaintiff has no standing to sue for such violation: this is so even if Plaintiff deems or designates himself as a third-party beneficiary of this contract. *See Brown v. Sadowski*, 2009 U.S. Dist. LEXIS 62718, at *13, 2009 WL 2182604 (D.N.J. July 20, 2009) ("Plaintiff has no standing to seek enforcement of any duties his prison officials might owe to the state, since Plaintiff is not an expressly designated third party beneficiary of the contracts, if any, that the state might have with the prison officials") (relying on *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006)); *accord Glenn v. Hayman*, 2007 U.S. Dist. LEXIS 20092, at *34, 2007 WL 894213 (D.N.J. Mar. 20, 2007) (analogously relying on *Anza* for the observation that, "[s]ince the State of New Jersey was the allegedly defrauded party (and in no way designated Plaintiffs to litigate the alleged RICO

claim on behalf of the State), Plaintiffs cannot bring this claim").

*Maqbool v. Univeristy Hosp. of Medicine & Dentistry of New Jersey,* 2012 WL 2374689, at * 4 (D.N.J. June 13, 2012) (quoting *Parker v. Gateway Nu–Way Found.*, 2010 U.S. Dist. LEXIS 115116, at *14–15, 2010 WL 4366144 (D.N.J. Oct. 26, 2010). *See also Green v. Corzine*, 2011 WL 735745, at * 4 (D.N.J. Feb. 22, 2011); *Edwards v. Corr. Medical Serv.*, 2010 WL 920020, at * 4 (D.N.J. Mar. 9, 2010). This Court sees no reason to depart from the sound decisions made by the other courts in this district on this issue and will dismiss Plaintiff's breach of contract claim.

**b. Medical Malpractice**

Plaintiff alleges a claim of medical malpractice against all defendants.

With respect to medical malpractice, Plaintiff must demonstrate "(1) the applicable professional standard of care, (2) that [the] defendant deviated from that standard of care, and (3) that the deviation was the proximate cause of [the] plaintiff's injuries." *N.D. ex rel. P.D. v. Rosen*, 2011 WL 2410332, *8 (N.J.Super. App. Div. June 13, 2011) (citing Gardner v. Pawliw, 150 N.J. 359, 375 (1997)). *See also Verdicchio v. Ricca*, 179 N.J. 1, 23 (2004) ("A medical malpractice case is a kind of tort action in which the traditional negligence elements are refined to reflect the professional setting of a physician-patient relationship."). Plaintiff alleges that these defendants discharged him from his biopsy without proper medication and instructions; discontinued radiation therapy halfway through the prescribed forty-four sessions; failed to provide him with the full length radiation sessions; and denied him a second opinion after the biopsy. Due to the negligence of the defendants, Plaintiff was in extreme pain and was forced to undergo gall bladder removal surgery; forty-four sessions of radiation; permanent disability due to infection; severe drop in sperm count; mental and emotional anguish; and a "death sentence" prognosis. (Compl.

11

¶¶ 60-64.) At this juncture, Plaintiff has alleged sufficient facts to allow this claim to proceed.

**c. Intentional Infliction of Emotional Distress**

The elements of the New Jersey common law tort for intentional infliction of emotional distress were set forth by the Supreme Court of New Jersey in *Buckley v. Trenton Saving Fund Society*, 111 N.J. 355 (1988). "Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Id.* at 366. More specifically, first, the defendant must have acted intentionally or recklessly; that is, the defendant must have intended "both to do the act and to produce emotional distress," or the defendant must have acted "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Id.* Second, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted). Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress. *Id.* Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." *Id.* (internal quotation marks and citation omitted). "To prove a claim for intentional infliction of emotional distress, a plaintiff's burden of proof must meet an 'elevated threshold' that is satisfied only in extreme cases." *DiClemente v. Jennings*, 2012 WL 5629659, at *8 (N.J. Super. Ct. App. Div. Nov. 16, 2012).

In the complaint, Plaintiff makes only general allegations in support of this claim. He merely states that the defendants "each have intentionally inflicted emotional distress upon Plaintiff by engaging in a calculated extreme course of conduct intending to cause Plaintiff

12

extreme emotional distress." (Compl. ¶ 84.) These allegations fall far short of the pleading requirements imposed by *Iqbal* and accordingly, this claim will be dismissed without prejudice for failure to state a claim.

### 4. "Constitutional" and "Tort" Claims

In Counts Seven through Nine of the Complaint, Plaintiff alleges a "state constitutional claim," a "federal constitutional tort" and a "state constitutional tort." (Compl. ¶¶ 89-110.) The "facts" in support of these claims are non-specific and appear to be largely repetitive of the claims already previously raised. To the extent the claims are not duplicative, the Court is unable to determine precisely what claims Plaintiff intended to raise and as such, these claims will be dismissed without prejudice.

## III. CONCLUSION

For the reasons stated above, Plaintiff's Eighth Amendment medical claim will be allowed to proceed against Defendants Jane Doe Nos. 1 & 4 and Dr. Terris. Plaintiff's medical malpractice claim will also be allowed to proceed. All other claims are dismissed without prejudice at this time. An appropriate order follows.

Dated:

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

January 27, 2014